**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**PENINSULA COMMUNICATIONS,**
**INC., Defendant–Appellant.**

No. 01–35965.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 6, 2002.

Filed April 22, 2002.

**834**

Kenneth P. Jacobus, Anchorage, AL, for the defendant-appellant.

Richard L. Pomeroy, Assistant United States Attorney for the District of Alaska, Anchorage, AL, and Gregory M. Christopher, Counsel, Federal Communications Commission, Washington, D.C., for the plaintiff-appellee.

Before: ALARCON and SILVERMAN, Circuit Judges, and BREWSTER,* Senior District Judge.

BREWSTER, Senior District Judge.

Peninsula Communications, Inc. ("Peninsula"), owner of several Alaska radio stations, appeals the district court's orders denying its motions to dismiss for lack of subject matter jurisdiction, denying its motions to stay, and issuing a preliminary injunction ordering it to cease operation of certain of its stations. We have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1), and we affirm.

## I.

### Factual and Procedural Background

The United States sued Peninsula below for an injunction requiring Peninsula to comply with an order by the Federal Communications Commission ("FCC") that Peninsula cease operating seven FM translator radio stations.[1] The Government

---

* The Honorable Rudi M. Brewster, Senior United States District Judge for the Southern District of California, sitting by designation.

1. An FM translator is "[a] station in the broadcasting service operated for the purpose of retransmitting the signals of an FM radio broadcast station or another FM broadcast translator station without significantly altering any characteristics of the incoming signal other than its frequency and amplitude, in order to provide FM broadcast service to the general public." 47 C.F.R. § 74.1201(a) (2000).

filed its suit under the authority of Section 401 of the Communications Act of 1934, 47 U.S.C. § 151 *et seq.*, which permits the United States Attorney General to apply to federal district courts for injunctions to enforce orders of the FCC.

Peninsula is an Alaskan broadcasting company that owns nine translators as well as the translators' two primary FM stations.[2] Until 1990, Peninsula's ownership of both the translators and their primary stations was permitted by FCC licensing rules. In that year, however, the FCC revised 47 C.F.R. § 74.1232(d) to provide that "[a]n authorization for an FM translator whose coverage contour extends beyond the protected contour of the commercial primary station will not be granted to the licensee or permittee of a commercial FM radio broadcast station." 55 Fed. Reg. 50,690, 50,696 (December 10, 1990). The new rule was effective June 1, 1991, with previously licensed translators required to comply no later than June 1, 1994. *See id.* at 50,690 *and see* 6 FCC Rcd. 2334, 2334, 1991 WL 640093 (1991).

In November of 1995, Peninsula filed renewal license applications with the FCC for its nine translator stations and two primary stations. In September 1996, the FCC determined that because Peninsula owned both the translators and their primary stations, the licenses for the translator stations could not be renewed unless Peninsula assigned them to another entity. The FCC also concluded at that time that Peninsula had been operating the translators in violation of 47 C.F.R. § 74.1232(d) since June 1, 1994, the date by which all

translators were to be in compliance with the new rule.[3]

Peninsula then filed assignment applications so it could transfer the translators to a different owner and thereby bring them into compliance with section 74.1232(d). The FCC approved the proposed assignments. In November 1997, the FCC granted the 1995 license renewal applications conditioned on consummation of the assignments, stating that failure to meet the divestiture condition would render the grants null and void.

Thereafter, the proceedings before the FCC took a rather complex procedural turn, the details of which are not relevant here. In short, Peninsula filed petitions with the FCC and an appeal to the United States Circuit Court of Appeals for the District of Columbia ("D.C. Circuit") objecting to the conditions attached to renewal of Peninsula's translator licenses. The FCC denied Peninsula's petitions, and because of procedural complications, the D.C. Circuit dismissed Peninsula's appeal.

Ultimately, Peninsula's petitions to the FCC resulted in the FCC's issuance in May 2001 of a Memorandum Opinion and Order and Order to Show Cause ("May 2001 decision"). *In re Peninsula Communications, Inc.*, 16 F.C.C. Rcd. 11,364, 2001 WL 526732 (2001). In the May 2001 decision, the FCC determined that it was unlikely that Peninsula would ever consummate transfer of the translator licenses. Based on this conclusion, it rescinded the conditional grants of Peninsula's renewal applications with respect to seven of the translators, and ordered that Peninsula cease operating them by midnight on May 19, 2001.[4] Peninsula did not terminate

**2.** A "primary FM station" is the station whose signal a translator retransmits. 47 C.F.R. § 74.1201(d) (2000).

**3.** In a later decision, the FCC determined that Peninsula had been violating the new 47 C.F.R. § 74.1232(d) as to only seven of its

nine translators, because Peninsula had valid waivers as to two of them.

**4.** The seven translators were K257DB, Anchor Point, Alaska; K265CK, Kachemak City, Alaska; K272CN, Homer, Alaska; K285EF,

operation of the seven translators as ordered and has continued to operate them to date. On June 15, 2001, Peninsula filed an appeal of the May 2001 decision to the D.C. Circuit as permitted by 47 U.S.C. § 402.

In July 2001, pursuant to the procedure for enforcing FCC orders set forth in 47 U.S.C. § 401(b),[5] the United States filed the action below in the United States District Court for the District of Alaska seeking an injunction to enforce the terms of the FCC's May 2001 order. The district court denied Peninsula's motions to dismiss for lack of subject matter jurisdiction, denied its motions to stay, and on October 17, 2001, issued a preliminary injunction ordering Peninsula to "immediately cease operating" the seven FM translator stations.[6]

## II.

■ Peninsula argues the district court erred in denying its motions to dismiss for lack of subject matter jurisdiction. The existence of subject matter jurisdiction is a question of law reviewed *de novo*. *Harden v. Roadway Package Sys., Inc.*, 249 F.3d 1137, 1140 (9th Cir.2001). A district court's findings of fact relevant to its determination of subject matter jurisdiction are reviewed for clear error. *La Reunion Francaise SA v. Barnes*, 247 F.3d 1022, 1024 (9th Cir.2001).

■ Peninsula submits two arguments in support of its contention that the district court lacks subject matter jurisdiction over this action. First, Peninsula argues that a federal district court lacks jurisdiction over a complaint to enforce an order under 47 U.S.C. § 401 where that same order has been appealed to the D.C. Circuit under 47 U.S.C. § 402.

Under Section 401(b), if any person fails to obey an order of the FCC, the United States Attorney General may "apply to the appropriate district court" for an injunction to enforce the order. Under Section 402(b), an aggrieved party may appeal an order of the FCC to the D.C. Circuit. According to Peninsula, we should understand these statutes to operate so that the fact of filing of an appeal of an FCC order to the D.C. Circuit divests a district court of jurisdiction to enforce the same order. Peninsula's arguments are based almost entirely on its reading of the statutory language of 47 U.S.C. §§ 401 and 402.[7]

■ We reject Peninsula's interpretation of the interplay between Sections 401 and 402 of the Communications Act of 1934. Nothing in the language of Sections 401 or 402 suggests that concurrent suits such as the ones Peninsula was involved with here were not envisioned by the Act. Rather than creating a system of conflicting jurisdiction, the two provisions operate

Kenai, Alaska; K283AB, Kenai/Soldotna, Alaska; and K274AB and K285AA, Kodiak, Alaska. The FCC determined that Peninsula's operation of its remaining two translators was permissible pursuant to validly held waivers.

5. 47 U.S.C. § 401(b) provides that "[i]f any person fails or neglects to obey any order of the Commission ... while the same is in effect, ... the United States, by its Attorney General, may apply to the appropriate district court of the United States for the enforcement of such order." 47 U.S.C. § 401(b).

6. On November 21, 2001, this court granted appellants an emergency stay of the district court's preliminary injunction order pending resolution of this appeal.

7. Peninsula's attempt to find support in *Helena TV, Inc. v. F.C.C.*, 269 F.2d 30 (9th Cir. 1959) (per curiam) is off the mark. That case merely held that this circuit had no jurisdiction to review an FCC order because 47 U.S.C. § 402(b) placed appellate jurisdiction exclusively in the D.C. Circuit. *Helena TV, Inc.*, 269 F.2d at 30.

to permit parallel concurrent suits in the district court and the D.C. Circuit. We are persuaded in reaching this conclusion by the Sixth Circuit's view that "[u]nder the scheme envisioned by the Act, the district court's powers and the D.C. Circuit's powers are complementary rather than contradictory." *United States v. Szoka,* 260 F.3d 516, 525 (6th Cir.2001). We also note that FCC orders are effective on the date of their release unless noted otherwise. *See id.* at 530, *citing* 47 C.F.R. §§ 1.103(a), 1.4(b)(2). Filing an appeal under Section 402 does not excuse a broadcaster from complying with the FCC order absent a decision by the D.C. Circuit to stay the order. *See* 47 U.S.C. § 402(c) (giving D.C. Circuit power to enjoin enforcement of the FCC order if it finds such relief just and proper). It is consistent with the Act's scheme of complementary powers that a broadcaster choosing to disobey an FCC order, while the order is on appeal but has not been stayed, might simultaneously be subjected to an enforcement suit in a district court. Peninsula offers no convincing reason why we should conclude that the appeal of an FCC order to the D.C. Circuit under Section 402 divests a district court of jurisdiction to enforce the order under Section 401.

█ Peninsula's second subject matter jurisdiction argument is, like the first one, based on the interaction between Sections 401 and 402. Peninsula urges that even if the court below generally has subject matter jurisdiction over this enforcement action, it lacks subject matter jurisdiction to decide the specific issue of whether the order was "regularly made" under Section 401(b). Because the finding that an FCC order was "regularly made" is necessary to

issuance of an injunction under Section 401(b), if Peninsula is correct, and the district court lacked jurisdiction to decide that specific issue, then it was error to issue the injunction against Peninsula below.

Peninsula contends that the language of Section 402(c) supports its position. That provision reads, in relevant part, that upon filing a notice of appeal with the D.C. Circuit, the D.C. Circuit "shall have jurisdiction of the proceedings *and of the questions determined therein* . . . ." 47 U.S.C. § 402(c) (emphasis added). Peninsula argues that this statutory language should be interpreted to mean that once a question is raised before the D.C. Circuit, a district court acting under Section 401 loses jurisdiction to consider that question. The overlapping question here, according to Peninsula, is whether the FCC's order—that is, the May 2001 decision—is valid because it was issued without a hearing.[8] Peninsula claims that once it brought this issue before the D.C. Circuit, the district court lost jurisdiction to consider it.

We reject a construction of Sections 401 and 402 that would deprive the district court of jurisdiction to enforce an FCC order where to do so it would have to decide an issue already before the D.C. Circuit. The language of Section 402(c) does not suggest that the D.C. Circuit has exclusive jurisdiction over any question before it such that no other court could entertain the same question, nor does Peninsula provide any authority for such an interpretation.

█ Nor is the construction Peninsula offers necessary to preserve comity be-

---

**8.** The Government claims that Peninsula failed to raise the argument below that the FCC order was not "regularly made" because it was issued without a hearing. We disagree.

Peninsula did raise the argument in its "Motion for Stay and in Opposition to Motion for Preliminary Injunction."

tween the courts. The roles created by Sections 401 and 402 are distinct. *See, e.g., Hawaiian Tel. Co. v. Public Util. Comm'n of State of Hawaii,* 827 F.2d 1264, 1272 (9th Cir.1987) (discussing scope of proceedings under Sections 401(b) and 402(a)). Under those provisions, only the D.C. Circuit is empowered to affirm or reverse an FCC order on its merits. *See* 47 U.S.C. § 402(h). The district court has no comparable authority under Section 401 to invalidate an FCC order it finds not to have been "regularly made"—instead, it is confined to the limited role of issuing or not issuing an injunction. Thus, the two courts will not be placed in a position of using their powers simultaneously to work conflicting results.[9]

In sum, the district court had subject matter jurisdiction over the proceedings below for enforcement of the FCC's order, in spite of the fact that Peninsula had appealed the same order to the D.C. Circuit, and in spite of the fact that Peninsula raised identical issues in both courts.

### III.

■ Next, Peninsula argues the district court erred in refusing to stay the enforcement proceedings pending resolution of its appeal to the D.C. Circuit. We review denial of a motion for stay for an abuse of discretion. *MacKillop v. Lowe's Mkt., Inc.,* 58 F.3d 1441, 1446 (9th Cir.1995).

Peninsula argues the district court should have entered a stay below because all the equitable factors a court generally considers in determining whether to enter a stay pending appeal were present—that is, likelihood of success on the merits, extent of irreparable injury if a stay does not issue, balance of hardships, and public interest. The district court denied Peninsula's motions for stay on grounds that the request for a stay was more properly brought before the D.C. Circuit under Section 402(c).[10]

We agree with the district court. Under the procedural scheme set up by the Communications Act of 1934, it is the D.C. Circuit, not the district court, that is empowered to stay enforcement of an FCC order under Section 402(c). *See Szoka,* 260 F.3d at 530 (noting that automatic stay of district court proceedings upon filing an appeal "would prevent the FCC from enforcing its regulations and would enable a broadcaster against whom an order was entered to delay the enforcement of the order by dragging out the appeals process"). Accordingly, the district court did not abuse its discretion in refusing to stay proceedings below pending Peninsula's appeal to the D.C. Circuit.

9. It is possible that the D.C. Circuit could issue a stay of enforcement of an FCC order, or could reverse an order, at the same time that a district court issues an injunction enforcing the order. However, this possibility still does not create a comity concern rising to the level of jurisdictional significance. Any stay issued by the D.C. Circuit would be based on its assessment of the substantive merits of the FCC's order, while a district court's injunction would be based on a far more superficial inquiry into the procedural regularity of the order. *See Hawaiian Tele. Co.,* 827 F.2d at 1272. Thus, any conflicting result reached by the courts would not be the product of inconsistent conclusions about the validity of the order. It is entirely consistent to hold that an order is, on the one hand, procedurally regular, but on the other hand, substantively flawed.

10. Section 402(c) states, in pertinent part, that the D.C. Circuit "shall have power ... to grant such temporary relief as it may deem just and proper. Orders granting temporary relief may be either affirmative or negative in their scope and application so as to permit either the maintenance of the status quo in the matter in which the appeal is taken or the restoration of a position or status terminated or adversely affected by the [FCC] order appealed from...." 47 U.S.C. § 402(c).

## IV.

In its statement of issues for review, Peninsula raised the issue whether the district court erred in issuing the preliminary injunction without holding a hearing, but then it neglected to address the issue in the body of its brief. However, the Government does raise the issue in its brief. "We have discretion to review an issue not raised by appellant . . . when it is raised in the appellee's brief." *In re Riverside–Linden Inv. Co.*, 945 F.2d 320, 324 (9th Cir.1991), *citing Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir.1990). Therefore, we briefly address the point.

A district court's decision to hold a hearing or proceed by affidavit is reviewed for abuse of discretion. *United States v. Alexander*, 695 F.2d 398, 402 (9th Cir. 1982), *citing United States v. Nace*, 561 F.2d 763, 772 (9th Cir.1977). Section 401(b) does seem to require a hearing, stating that "[i]f, *after hearing*, that court determines that the order was regularly made . . . ." 47 U.S.C. § 401(b) (emphasis added). However, this language does not make an oral hearing mandatory. Instead, we find the statute simply creates a procedure consistent with a court's usual juridical duties, requiring the court to receive evidence as it does in the normal course.

In the normal course, under Federal Rule of Civil Procedure 78 and Alaska Local Rule 7.1(i), the court below had discretion to hold an oral hearing or proceed by affidavit. Peninsula argued below in support of its motion for reconsideration that an oral hearing would have permitted Peninsula to "introduce the testimony of David Becker and Jeff Southmayd, Attorney at Law [and Peninsula's attorney in the D.C. Circuit appeal] . . . [t]his testimony is necessary in order to fully present the position of [Peninsula] to this Court, and to answer whatever questions this Court may have." However, Peninsula had already submitted an affidavit from David Becker, and it failed to say what additional value his oral testimony would give the court. Peninsula also failed to state any relevant facts to which Jeff Southmayd would testify. The district court did not abuse its discretion in choosing to decide the preliminary injunction motion by affidavit.

## V.

Finally, Peninsula argues that the district court erred in issuing a preliminary injunction because Peninsula actually continues to operate under valid FCC licenses. It bases its contention alternatively on certain FCC regulations and on a provision of the Administrative Procedure Act ("APA"). According to Peninsula, one of these sets of provisions renders its licenses valid.

A district court's order regarding preliminary injunctive relief is subject to limited review. *See Rucker v. Davis*, 237 F.3d 1113, 1118 (9th Cir.2001) (en banc). The grant or denial of a preliminary injunction will be reversed only where the district court abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact. *Id.*

Peninsula first points to 47 C.F.R. § 1.62(a)(1), which provides, in pertinent part, that "[w]here there is pending before the Commission at the time of expiration of license any proper and timely application for renewal of license . . . such license shall continue in effect . . . until such time as the Commission shall make a final determination with respect to the renewal application." Then, Peninsula notes that under 47 C.F.R. § 73.3523(d)(2), "[a]n application shall be deemed to be pending before the Commission . . . until an order

of the Commission granting or denying the application is no longer subject to reconsideration by the Commission or to review by any court." According to Peninsula, its licenses "continue in effect" under 47 C.F.R. § 1.62(a)(1) because its application is still "pending" under 47 C.F.R. § 73.3523(d)(2).

Peninsula is wrong. The definition of "pending" in 47 C.F.R. § 73.3523(d)(2) is limited to proceedings under that section of the regulations, and thus does not apply to the renewal application procedure set forth in 47 C.F.R. § 1.62(a)(1). *See* 47 C.F.R. § 73.3523(d) (introducing definitions in that subsection with the limiting phrase "[f]or the purpose of this section ...."). Therefore, Peninsula cannot revive its licenses by importing 47 C.F.R. § 73.3523(d)(2)'s definition of "pending" into 47 C.F.R. § 1.62(a)(1).

Peninsula's second attempt to revive its licenses is a contention that they remain valid under a provision of the Administrative Procedures Act, 5 U.S.C. §§ 551 *et seq.* Peninsula refers to 47 U.S.C. § 312(e), which sets forth the procedure for the FCC's issuance of a cease and desist order. It states that "[t]he provisions of section 558(c) of Title 5 ... shall apply ... to the institution, under this section, of any proceeding for issuance of a cease and desist order." Under 5 U.S.C. § 558(c), "[w]hen the licensee has made timely and sufficient application for a renewal or a new license in accordance with agency rules, a license with reference to an activity of a continuing nature does not expire until the application has been finally determined by the agency." Peninsula argues that its application has not yet been finally determined by the FCC and that its licenses have therefore not yet expired.

Even assuming 47 U.S.C. § 312(e) applies to the FCC order at issue in this action, a question we do not reach, 5 U.S.C. § 558(c) does not save Peninsula's licenses. Section 558(c) states that a license does not expire "until the application has been finally determined by the agency." Here, Peninsula's renewal applications have been finally determined by the FCC, at the very latest as of the date of the May 18, 2001 FCC order which is the subject of this enforcement action and the D.C. Circuit appeal. Thus, even under section 558(c), Peninsula's licenses have expired.

## VI.

### Conclusion

For the foregoing reasons, we AFFIRM the district court's issuance of a preliminary injunction and denial of Peninsula's motions to dismiss and requests for a stay. The emergency stay of the district court's preliminary injunction, which was entered by this court on November 21, 2001 pending resolution of this appeal, is lifted.