EL POLLO LOCO, INC., a Delaware corporation, Plaintiff–Appellee,

v.

**Abdul Malik HASHIM, an individual, Defendant–Appellant.**

No. 02–55378.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 10, 2002.

Filed Jan. 17, 2003.

**1034**

Kathy A. Jorrie, Luce, Forward, Hamilton & Scripps, LLP, Los Angeles, CA, for the appellant.

Jonathan Solish, Glenn J. Plattner, Jenkens & Gilchrist, LLP, Los Angeles, CA, for the appellee.

Before THOMPSON and RAWLINSON, Circuit Judges, and SCHWARZER,* Senior District Judge.

## OPINION

RAWLINSON, Circuit Judge.

Abdul Malik Hashim ("Hashim") executed two franchise agreements (the "Franchise Agreements") and two Sublease Agreements with El Pollo Loco, Inc. ("EPL") for the operation of two EPL restaurants (the "Restaurants"), while concurrently operating six Kentucky Fried Chicken, Inc. ("KFC") restaurants. Upon discovering Hashim's concurrent ownership, EPL terminated the Franchise Agreements and instituted legal proceedings against Hashim. Hashim appeals the district court's order granting EPL's Motion for Preliminary Injunction. The central issue is whether the discovery rule applies to toll the statute of limitations in a contract claim, where fraudulent misrepresentations are asserted in conjunction with the contract claim.

We have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1) to hear Hashim's challenge to the district court's preliminary injunction. *See A & M Records, Inc. v.*

---

* The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

*Napster, Inc.,* 284 F.3d 1091, 1095 (9th Cir.2002).

## I. BACKGROUND

Hashim entered into two Franchise Agreements with EPL on November 28, 1994, for the operation of EPL Restaurants in Santa Clara and Sunnyvale, California. On the same date, Hashim and EPL also entered into two Sublease Agreements ("Sublease Agreements") for the Restaurants.

Hashim entered into six Franchise Agreements with KFC between 1992 and 1999.[1] According to Ken Clark ("Clark"), EPL's Vice President of Operations, "EPL screens prospective franchisees to be certain that they are not associated with any company that is in competition with EPL, including all other fast food restaurants that specialize in chicken." Clark represented that Hashim never disclosed his operation of EPL and KFC franchises concurrently. When Hashim applied for his EPL franchises in 1994, EPL asked him "whether he currently or previously had any interest in a restaurant operation." Hashim checked "Yes," explaining his position as operating partner of Burger King and franchisee of KFC. Hashim disclosed that he *"was[2] the franchisee of KFC"* from 1989 to 1993 (emphasis added), and "pro-

vided EPL with a letter dated July 25, 1994 from Campbell at KFC which purported to confirm that the transfer of his KFC restaurant was in the process of being completed."[3] The letter was a forgery. Clark declared that "[a]t no time prior to November 28, 1994 did Hashim disclose that he was still a KFC franchisee or that his restaurant had not been transferred."[4]

Hashim initially denied that he operated any EPL Restaurants. He later explained to KFC that his relationship with EPL had ended. After serving Hashim with notice of default for engaging in a competing business, KFC received a letter dated September 4, 2001, on EPL letterhead, purportedly from Karen Klymshyn, an EPL employee, stating that Hashim had transferred his EPL interests to a third party.[5]

Linda Coppola ("Coppola"), EPL's Senior Paralegal, learned of Hashim's KFC franchises after she received a call from a KFC employee "inquiring about a September 4, 2001 letter, on EPL letterhead, which purported to be from Karen L. Klymshyn...." The letter falsely confirmed a completed transfer of Hashim's EPL restaurants to Akber Rashim, Hashim's general manager. Coppola represented that the letter was not written or autho-

1. When Hashim acquired the two EPL restaurants, he already owned one KFC franchise, and later acquired five more KFC franchises. Hashim entered into one KFC Franchise Agreement in July, 1992; four in November, 1997; and one in March, 1999.

2. Although the application stated Hashim "was" a KFC franchisee, Hashim asserted he "did not intend to deceive EPL" when he informed them he owned a KFC franchise between 1989 and 1993. Also, Hashim declared that he told EPL verbally and may have told them in writing of his KFC ownership interest. Hashim's EPL application was submitted in 1994, and he represented that his KFC franchise ended in 1993, one year before the EPL application was submitted.

3. The letter was addressed to "Mr. Sam Hashim," and acknowledged receipt of documents for transfer of Hashim's California Pacific Palisades KFC franchise. The letter stated that Hashim would "soon receive the fully-executed copy of the Assignment of Franchise and Release ...," and that the "transfer process should be completed within two months."

4. According to Clark, "[h]ad EPL known that Hashim was still operating a KFC franchise it would not have approved his application."

5. Hashim denied any involvement in the preparation or delivery of the September 4, 2001, letter.

rized by any EPL employee, and that "Klymshyn, the alleged author, had left EPL's employ approximately a year earlier."

### A. EPL's Termination of Hashim's Franchise Agreements

On September 21, 2001, EPL sent Hashim notices of termination of the Franchise Agreements, effective immediately, and notices of default and termination of the Sublease Agreements, because "he was operating KFC restaurants in violation of his EPL Franchise Agreements and because he had sent a forged letter on EPL stationery."[6] In November 2001, EPL sent Hashim amended notices of termination, adding an assertion that Hashim "made material misrepresentations in his initial applications to become a franchisee," by stating that he was no longer a KFC franchisee, when in fact he "was a KFC franchisee at the time of his application and during the entire time he was an EPL franchisee." The notices of additional grounds for termination charged that Hashim knowingly provided EPL with false information in the form of a forged[7] letter from KFC purporting to confirm transfer of the KFC franchise. According to Hashim's attorney, Hashim's general manager, Akber Rashim, was responsible for forging and faxing the letter to KFC.

### B. Relevant Portions of the Franchise Agreements

EPL's immediate termination without an opportunity to cure was made pursuant to the following provisions of the Franchise Agreements: ¶ 1.4; ¶ 17.2; ¶¶ 18.2(a), (h), and (m); and ¶ 20.5.

Paragraph 1.4 of the Franchise Agreements states:

> It is expressly understood and agreed by the parties that Franchisee is and shall be an independent contractor, that Franchisee is not for any purpose an employee or agent of the Company, and that all of the personnel employed by Franchisee at the Restaurant will be employees or agents of Franchisee as an independent contractor and will not be employees or agents of the Company. Franchisee understands and agrees that, as an independent contractor, it does not have the authority to do anything for or on behalf of the Company including, but not limited to holding itself out as the Company; signing contracts, notes or other instruments; purchasing, acquiring or disposing of any property; or incurring any other obligations or liability.

Paragraph 17.2 provides:

> The parties acknowledge that this Agreement is personal in nature with respect to Franchisee, being entered into by the Company in reliance upon and in consideration of the personal skills, qualifications and trust and confidence reposed in Franchisee and Franchisee's present partners or officers if Franchisee is a partnership or a corporation. Therefore, except as provided in Paragraphs 17.3 and 17.4, the rights, privileges and interests of Franchisee under this Agreement including, but not limited to, the right to operate the Res-

---

**6.** The September 4, 2001, letter to KFC on EPL letterhead, purporting to transfer Hashim's EPL franchise, was itself a violation of the Franchise Agreement, as ¶ 18.2(m) requires EPL's written consent prior to a franchise transfer, and no such consent was granted.

**7.** Pamela Campbell ("Campbell"), a Franchise Contract Specialist with KFC and the alleged author of the July 25, 1994, transfer letter, declared that the signature on the letter was not hers, and that the writing of such a letter was outside the scope of her job responsibilities.

taurant and use the El Pollo Loco Marks, shall not be assigned, sold, transferred, leased, divided or encumbered, voluntarily or involuntarily, in whole. or in part, by operation of law or otherwise.[8]

Finally, the provisions of Section 18.2 of the Franchise Agreement declare that:

In addition to all other available rights and remedies, the Company shall have the right to immediately terminate this Agreement without prior notice to Franchisee upon the occurrence of any of the following events:

a. Abandonment of the Restaurant by Franchisee by failing to operate the Restaurant business for five (5) consecutive days or any shorter period of time after which the Company reasonably determines that Franchisee does not intend to continue to operate the business, unless such failure is due to fire, flood, earthquake or other similar cause beyond Franchisee's control;

. . .

h. Any material misrepresentation is made by Franchisee in connection with the acquisition of the franchise herein or Franchisee engages in conduct which reflects materially and unfavorably upon the operation and reputation of the Restaurant business or the El Pollo Loco System;

. . .

m. Any purported assignment, transfer or sub-license of this franchise, or any right hereunder, without the prior written consent of the Company[.]

Pursuant to ¶ 20.5 of the Franchise Agreement, Hashim "shall neither directly nor indirectly own, operate, control or have any financial interest in any other business which would be in competition with the business of the Restaurant ... without the prior written consent" of EPL.

### C. EPL's Action Against Hashim

In its action against Hashim and in reliance on the terms of the Franchise Agreement, EPL sought: 1) termination of the Franchise Agreements; 2) ejectment; 3) a preliminary injunction prohibiting Hashim from continuing his breach of the Franchise Agreements; and 4) possession of the Restaurants. EPL's complaint also asserted claims for state and common law misappropriation of trade secrets; state and federal trademark infringement; unfair competition and business practices; and fraud in the inducement.

### D. EPL's Motion for Preliminary Injunction

EPL also moved for preliminary injunction after it terminated the Franchise Agreements, and after Hashim continued operating the Restaurants "using EPL's name, trademarks and trade secrets." Hashim opposed the requested injunction on the basis that EPL's suit was barred under the statute of limitations. EPL countered that the discovery rule foreclosed Hashim's statute of limitations argument. In response, Hashim moved to strike the discovery argument submitted in EPL's Reply Brief, or in the alternative, to permit the filing of supplemental briefs.

The district court did not address Hashim's motion to strike or to allow supplemental briefing. However, during the preliminary injunction hearing, the district court provided Hashim's attorney an opportunity to respond to EPL's discovery rule argument. After hearing from Hashim's attorney, the district court stated it

---

**8.** Paragraphs 17.3 and 17.4 have no applicability to the instant action.

would "take the matter under submission to study this case and the point that counsel has raised."

The district court granted EPL's motion for preliminary injunction, and Hashim timely filed his notice of appeal.

## II. DISCUSSION

### A. Standard of Review

■ "A district court's order regarding preliminary injunctive relief is subject to limited review." *United States v. Peninsula Communications, Inc.*, 287 F.3d 832, 839 (9th Cir.2002) (citation omitted). We review the district court's grant of a preliminary injunction for an abuse of discretion. *Id.* We will reverse a grant of a preliminary injunction "only where the district court abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact." *Id.* (citation omitted).

Hashim did not dispute the district court's findings of fact. Thus, we will review for application of erroneous legal principles. *See Napster, Inc.*, 239 F.3d at 1013. If it is claimed that the district court relied on an erroneous legal premise in reaching its decision, we review the underlying legal issue *de novo*. *Id.*

■ We review the district court's ruling on a motion to strike for an abuse of discretion. *See Yamaguchi v. United States Dep't of the Air Force*, 109 F.3d 1475, 1481–82 (9th Cir.1997). We review the district court's interpretation of a franchise agreement *de novo*. *See Knott v. McDonald's Corp.*, 147 F.3d 1065, 1067 (9th Cir.1998).

### B. The District Court Acted within its Discretion in Granting EPL's Motion for Preliminary Injunction

■ "Preliminary injunctive relief is available to a party who demonstrates ei-

ther: (1) a combination of probable success on the merits and the possibility of irreparable harm; or (2) that serious questions are raised and the balance of hardships tips in its favor." *Napster, Inc.*, 239 F.3d at 1013 (citation omitted).

■ The district court did not err in ruling that EPL demonstrated irreparable injury. "In a trademark infringement claim, 'irreparable injury may be presumed from a showing of likelihood of success on the merits.'" *GoTo.Com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 n. 4 (9th Cir.2000) (citation omitted). Pursuant to ¶ 18.2(h) of the Franchise Agreement, EPL had the right to "immediately terminate" the Franchise Agreements "without prior notice" to Hashim for "[a]ny material misrepresentations ... made by Franchisee in connection with the acquisition of the franchise ..." The district court found that Hashim's disclosures in the franchise application were material misrepresentations that warranted the termination of the Franchise Agreements. The district court also found that EPL presented evidence of irreparable harm from Hashim's continued unauthorized use of the EPL trademark. EPL made a sufficient showing of probable success on the merits and the possibility of irreparable harm. Thus, the district court did not abuse its discretion in granting EPL's preliminary injunction.

### C. The District Court Committed No Legal Error When It Applied the Discovery Rule to Toll the Statute of Limitations

■ Hashim argues that the district court erred when it applied the discovery rule, because *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 254 Cal.Rptr. 211, 765 P.2d 373 (1988), limits application of the discovery rule to contract cases in the context of fiduciary or special relation-

ships.[9] California provides a four-year statute of limitations for commencing a civil action based on a written contract.[10] CAL.CODE CIV. PROC. § 337 (West Ann. 1982). "[I]n ordinary tort and contract actions, the statute of limitations ... begins to run upon the occurrence of the last element essential to the cause of action. The plaintiff's ignorance of the cause of action ... does not toll the statute." *April Enter., Inc. v. KTTV and Metromedia, Inc.*, 147 Cal.App.3d 805, 195 Cal.Rptr. 421, 432 (1983) (citation omitted). The discovery rule ameliorates the harshness of the general rule "in some cases ... where it is manifestly unjust to deprive plaintiffs of a cause of action before they are aware that they have been injured." *Id.* (citation omitted).

 The "discovery rule may be applied to breaches which can be, and are, committed in secret and, moreover, where the harm flowing from those breaches will not be reasonably discoverable by plaintiffs until a future time." *Id.* at 437. The purpose of the discovery rule is to "protect[ ] those who are ignorant of their cause of action through no fault of their own." *Id.* Ultimately, the discovery rule "permits delayed accrual until a plaintiff knew or should have known of the wrongful conduct at issue." *Id.* (citation omitted).

 There is no need for the discovery rule to apply in the typical breach of contract case, where the buyer is immediately aware of the breach upon delivery of nonconforming goods, or where the seller knows of the breach when payment is delinquent. *See id.* at 436. Rather, the discovery rule applies to unique breach of contract cases when: 1) "[t]he injury or the act causing the injury, or both, have been difficult for the plaintiff to detect"; 2) "the defendant has been in a far superior position to comprehend the act and the injury"; or 3) "the defendant had reason to believe the plaintiff remained ignorant [that] he had been wronged." *Id.* at 436. The rationale underlying application of the discovery rule is that "plaintiffs should not suffer where circumstances prevent them from knowing they have been harmed ... [and] defendants should not be allowed to knowingly profit from their injuree's ignorance." *Id.*

In *Glue–Fold, Inc. v. Slautterback Corp.*, 82 Cal.App.4th 1018, 98 Cal.Rptr.2d 661 (Cal.Ct.App.2000), the California Court of Appeal "assume[d] for purposes of argument that the discovery rule is applicable" to a breach of contract cause of action. *Id.* at 669. However, because appellant failed to show it exercised reasonable diligence in investigating, it was not given the advantage of tolling under the discovery rule. *Id.* According to another California Court of Appeal decision, "[u]nder California law, a contract claim ... is governed by a four-year statute of limitations," but is "subject to ... the 'discovery rule.'" *Angeles Chem. Co. v. Spencer & Jones*, 44 Cal. App.4th 112, 119–20, 51 Cal.Rptr.2d 594 (1996).

Unlike the decision in *Foley,* the court in *April Enterprises, Inc.*, expressly "examine[d] whether the discovery rule also applie[d] to the breach of contract action." *April Enter., Inc.*, 195 Cal.Rptr. at 429. Extracting the fiduciary element from the breach of contract context, the court applied the discovery rule to breach of con-

---

9. Hashim has not cited specific language from *Foley* to support his discovery rule arguments. In fact, that court did not discuss the statute of limitations in relation to the discovery rule and its applicability to contract claims.

10. EPL's state law claims are governed by California law. *See Jacobs v. CBS Broad., Inc.*, 291 F.3d 1173, 1177 (9th Cir.2002).

tract actions "in narrow cases involving fraud ... or misrepresentation." *April Enter., Inc.*, 195 Cal.Rptr. at 435 (citations omitted).

We are confronted with a breach of contract case where EPL's discovery of the breach was hindered by Hashim's misrepresentations and fraud. Hashim's misrepresentations in his franchise application were "difficult for[EPL] to detect." *See April Enter., Inc.*, 195 Cal.Rptr. at 436. Hashim "had reason to believe [EPL] remained ignorant [it] had been wronged," because he himself made misrepresentations about his ownership of the KFC franchise at the time he applied for the two EPL Restaurants in 1994. *See id.*

■ Hashim seeks to avoid application of the discovery rule by arguing that EPL failed to exercise due diligence in discovering its cause of action. However, "the recipient of a fraudulent misrepresentation of fact is justified in relying upon its truth, although he might have ascertained the falsity of the representation had he undertaken an investigation." *Storage Servs. v. Oosterbaan*, 214 Cal.App.3d 498, 508, 262 Cal.Rptr. 689 (Cal.Ct.App.1989); *see also Van Meter v. Bent Constr. Co.*, 46 Cal.2d 588, 595, 297 P.2d 644 (Cal.1956) (negligent reliance should not bar equitable relief where plaintiff relied in good faith upon defendant's false representations). Hashim's misrepresentations and forgery hindered EPL's discovery of the breach under the Franchise Agreement. Accordingly, the district court did not err in applying the discovery rule to toll the statute of limitations.

### D. The District Court Committed No Legal Error When Interpreting the Franchise Agreements' Termination Provisions

■ The district court's ruling that the Franchise Agreements permitted termination without an opportunity to cure was not erroneous. Paragraph 18.2(h) of the Franchise Agreement provides for immediate termination of the Franchise Agreements "without prior notice [for] ... [a]ny material misrepresentation ... made by Franchisee in connection with the acquisition of the franchise...." A plain reading of ¶ 18.2 of the Franchise Agreement reveals that the Franchisee is not entitled to notice. Immediate termination without notice leaves no room for an opportunity to cure a misrepresentation. More importantly, Hashim's misrepresentations cannot be cured. The district court did not err in finding that Hashim's disclosures in the franchise application were material misrepresentations justifying EPL's immediate termination of the Franchise Agreements.

### E. The District Court Acted Within its Discretion When it Denied Hashim's Motion to Strike the Discovery Rule Argument in EPL's Reply Brief, or Allow Filing of a Supplemental Brief in Response

■ The district court did not abuse its discretion when it entertained EPL's discovery rule tolling argument. EPL's discovery rule argument was "raised for the first time in the reply brief," because EPL was responding to Hashim's argument that EPL's complaint was time-barred. Denying EPL the opportunity to counter this potentially dispositive argument would have effectively stripped EPL of its right to argue against Hashim's defense.

The transcripts of the preliminary injunction hearing reflect that the district court heard Hashim's arguments regarding the tolling issue. The transcripts also reveal that the district court specifically noted the cases upon which Hashim relied, stating it would "take the matter under submission to study this case [sic] and the

point that counsel has raised." *Cf. Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir.1996) (implying that a district court may consider new evidence presented in a reply brief if the district court gives the adverse party an opportunity to respond).

█ "Discretion is abused when the judicial action is 'arbitrary, fanciful or unreasonable' or 'where no reasonable man [or woman] would take the view adopted by the trial court.'" *United States Cellular Inv. Co. of L.A., Inc. v. GTE Mobilnet, Inc.*, 281 F.3d 929, 934 (9th Cir.2002) (citation omitted) (alteration in the original). Because the district court listened to, considered, and rejected Hashim's contentions, no abuse of discretion occurred.

### III. CONCLUSION

For the reasons set forth above, we **AFFIRM** the decision of the district court. We decline to rule on the pending request for attorney's fees because this case is before us on appeal of a preliminary injunction ruling. Attorney's fees are best addressed once the underlying action has been resolved in its entirety.

**AFFIRMED.**