Cassandra BROWN; Amy Courtney, Plaintiffs–Appellees,

v.

**CALIFORNIA DEPARTMENT OF TRANSPORTATION; Jeff Morales, Defendants–Appellants.**

No. 02–15385.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 9, 2002.

Filed March 13, 2003.

Bruce A. Behrens, Chief Counsel; David Gossage, Deputy Chief Counsel; Janet Wong, Assistant Chief Counsel; Daniel P. Weingarten, Deputy Attorney, San Francisco, CA, for the appellants.

James Wheaton, David Greene, Oakland, CA; G. Dana Scruggs, Austin B. Comstock, Nathan C. Benjamin, Santa Cruz, CA, for the appellees.

Before: D.W. NELSON, BEEZER and WARDLAW, *Circuit Judges.*

Opinion by Judge WARDLAW; Concurrence by Judge BEEZER.

## OPINION

WARDLAW, Circuit Judge.

We must decide whether the California Department of Transportation's policy of permitting an individual to display United States flags, but no other expressive banners, on highway overpasses constitutes unreasonable viewpoint discrimination in violation of the First Amendment.

## I. Background

In the wake of the September 11th terrorist attacks, an American citizenry united in grief, fear, and defense of country, joined in a spontaneous display of patriotism. Across America, her great national emblem, the United States flag, and its colors, became ubiquitous, appearing everywhere—from cars to homes, buildings to clothes. The President of the United States, on September 21, 2001, addressed the nation: "The only way to defeat terrorism as a threat to our way of life is to stop it, eliminate it and destroy it where it grows."[1] This declaration of a "war" on terrorism heightened the patriotic fervor, and, according to the California Department of Transportation ("CalTrans"), resulted in the proliferation of flags on California's highways.

Highway 17 in Santa Cruz, California, was no exception. Private individuals hung flags from the highway's overpasses. On November 27, 2001, Amy Courtney and Cassandra Brown, concerned over the public's apparent failure to question the prospect of going to war, hung a responsive banner adjacent to a flag reading, "At What Cost?". A Scotts Valley police officer immediately removed the banner because it posed a safety risk.[2] The following week Courtney and Brown attempted again to voice their message, hanging another sign reading, "At What Cost?" as well as one reading, "Are you Buying this War?". These anti-war banners were also immediately removed. Although the person who removed the banners is unknown, CalTrans has taken the position throughout this litigation that it would have removed them pursuant to its own policy if someone else had not.

It is CalTrans's stated encroachment permit policy that citizens who wish to display a sign on a California highway overpass must obtain a permit to do so. Even then, permits are only available for signs designating turnoffs for special events. Citizens wishing to display any other message are prohibited from using the highway overpass to do so. Notwithstanding this policy, CalTrans does not prohibit the display of American flags, nor does it impose a permitting process for their display.

Brown and Courtney filed an action under 42 U.S.C. § 1983 for deprivation of

---

1. *President Bush's Address on Terrorism Before a Joint Meeting of Congress,* N.Y. Times, Sept. 21, 2001, at B4.

2. The lawsuit also originally named the Scotts Valley Police Department and Police Chief Tom Bush for this act. The district court dismissed these parties because their inclusion was based on a single officer's action,

thus the Department was not engaged in a policy and practice of depriving citizens of their First Amendment rights sufficient to establish municipal liability. *See Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Courtney and Brown do not appeal the dismissal.

their First Amendment rights against Cal-Trans and its director Jeff Morales (collectively "CalTrans"). Finding Highway 17 to be a nonpublic forum under the First Amendment, the district court ruled that the CalTrans policy met neither the reasonableness nor viewpoint neutrality requirements for state infringement on speech in a nonpublic forum. Accordingly, it entered a preliminary injunction against CalTrans's policy of exempting American flags from permit requirements but requiring permits for, or prohibiting altogether, the display of all other expressive signs and banners.

CalTrans challenges entry of the injunction. It argues that because alternative means for expression of Courtney and Brown's anti-war messages are available, they failed to demonstrate the requisite risk of irreparable injury. CalTrans also asserts that Courtney and Brown failed to demonstrate a likelihood of success on the merits of their First Amendment claim, maintaining that its policy was both reasonable and viewpoint neutral. Because the policy is neither, and no equivalent alternative means of expression have been demonstrated, we affirm.[3]

## II. Standard of Review

■ To obtain a preliminary injunction, Courtney and Brown must demonstrate either "(1) a combination of probable success on the merits and the possibility of irreparable harm; or (2) that serious questions are raised and the balance of hardships tips in [their] favor." *A & M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1013 (9th Cir.2001). The formulas do not differ, but reflect "two points on a sliding scale in which the degree of irreparable harm increases as the probability of success on the merits decreases." *Associated*

*Gen. Contractors of Cal., Inc. v. Coalition for Econ. Equity,* 950 F.2d 1401, 1410 (9th Cir.1991).

■ We review the district court's grant of a preliminary injunction for abuse of discretion. *United States v. Peninsula Communications, Inc.,* 287 F.3d 832, 839 (9th Cir.2002). We review a district court's conclusion of law de novo. *Lovell v. Poway Unified Sch. Dist.,* 90 F.3d 367, 370 (9th Cir.1996). Given the "special solicitude" we have for claims alleging the abridgment of First Amendment rights, we review a district court's findings of fact when striking down a restriction on speech for clear error. *Id.* Within this framework, we review the application of facts to law on free speech questions de novo. *Planned Parenthood v. Am. Coalition of Life Activists,* 290 F.3d 1058, 1070 (9th Cir.2002) (en banc).

## III. Likelihood of Success on the Merits

To evaluate the likelihood of success on the merits of Courtney and Brown's free speech claim, we must address three issues. First, we must classify the highway under the Supreme Court's forum analysis to determine whether "the Government's interest in limiting the use of its property ... outweighs the interest of those wishing to use the property for other purposes." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.,* 473 U.S. 788, 800, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985). Second, we assess the appropriate level of scrutiny for that forum. *Children of the Rosary v. City of Phoenix,* 154 F.3d 972, 976 (9th Cir.1998). Finally, we must determine whether CalTrans's policy withstands this scrutiny. *Id.*

---

**3.** We have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1), allowing for the immediate appeal of an order granting a preliminary injunction.

**1222**

■■ "In defining the relevant forum, the Court has focused on the access sought by the speaker." *Id.* Because Courtney and Brown hung their banners from highway overpass fences, the forum at issue is the highway overpass fence. We must next determine whether a highway overpass fence is a public, designated public, or nonpublic forum. "A traditional public forum, such as a public park or sidewalk, is a place that has traditionally been available for public expression." *DiLoreto v. Downey Unified Sch. Dist. Bd. of Educ.*, 196 F.3d 958, 964 (9th Cir.1999) (internal quotation marks omitted). However, "[w]hen the government intentionally opens a nontraditional forum for public discourse it creates a designated public forum." *Id.* All remaining public property is considered nonpublic fora. *Id.* at 965.

■ The district court determined, and Courtney and Brown do not contend otherwise, that California state highway overpass fences are not public fora. We agree. The State's highway overpass fences have not "traditionally been available for public expression." *Id* at 964.

■ The district court also correctly determined that the overpass is not a designated public forum. "The government does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse." *Cornelius*, 473 U.S. at 802, 105 S.Ct. 3439. To determine whether the government intended to open the forum for public discourse, "the Court has looked to the policy and practice of the government, the nature of the property and its compatibility with expressive activity, and whether the forum was designed and dedicated to expressive activities...." *Children of the Rosary*, 154 F.3d at 976. As the district court recognized, overpass fences are not "compatible" with expressive activity because mes-

sages displayed invariably distract drivers, thereby posing safety risks. The "policy and practice" of CalTrans has been to prohibit all expressive banners except directional signs and American flags. Because CalTrans has not intentionally made highway overpasses available for public discourse, they are not designated public fora.

The highway overpasses are thus nonpublic fora. Restrictions on free expression in a nonpublic forum are constitutional only if the distinctions drawn are (1) "reasonable in light of the purpose served by the forum" and (2) "viewpoint neutral." *Cornelius*, 473 U.S. at 806, 105 S.Ct. 3439.

## A. Reasonableness

■ The "'reasonableness' analysis focuses on whether the limitation is consistent with preserving the property for the purpose to which it is dedicated." *DiLoreto*, 196 F.3d at 967. It is undisputed that the purpose of the highway is for transportation and CalTrans is charged with monitoring its maintenance and safety. The purpose of the highway overpass and its fence is for safe crossing over the highway, either by pedestrians or other vehicular traffic. CalTrans offers two reasons why its policy of allowing flags, but no other banners on the overpasses is reasonable: Its policy, it says, is designed to promote safety and conform to state law.

According to CalTrans, the posting of signs and banners "poses a variety of significant safety risks," including the potential for falling signs and distracted motorists. CalTrans believes that flags, while still distracting, are less distracting than banners, and therefore considers it reasonable not to remove them.

■ CalTrans's safety justifications for its policy of prohibiting or requiring permits for expressive banners, however, ap-

ply with equal force to flags. Allowing citizens to hang flags presents the same risk of falling objects that accompanies all other signs and banners. The record is devoid of evidence that flags are less prone to falling or are generally fastened more securely than other banners. Moreover, CalTrans's goal of reducing distractions to motorists is incompatible with the display of flags, which it concedes are also distracting. CalTrans offers no credible evidence for its supposition that flags are less distracting than other types of banners. Flags, particularly in a time of war, could evoke extremely distracting thoughts, including feelings of patriotism, remembrance of past wars and lost loved ones, fear, or impassioned dissent. On the other hand, depending on its content, a message on a homemade banner could evoke no reaction at all. CalTrans has not even studied the question of whether all flags are less distracting than any sign (even a blank one). While the inquiry into reasonableness is a deferential one, *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 683, 112 S.Ct. 2701, 120 L.Ed.2d 541 (1992), CalTrans's proffered justification that the display of flags, which poses the dual safety risks of falling objects and motorist distraction, increases highway safety is patently unreasonable.

CalTrans also contends that its policy is compelled by its obligation to comply with the 1953 California state statute governing the display of flags, which reads:

> The Flag of the United States of America and the Flag of the State of California may be displayed on a sidewalk located in or abutting on a state highway situated within a city, if the type of flagholder and the method of its installation and maintenance are not in violation of the department's rules.

Cal. Sts. & High.Code § 670.5. At oral argument, CalTrans abandoned its reliance on this statute, and for good reason. It simply does not apply to the facts of this case.

To determine whether a statute applies to a set of facts, we must begin with the text of the statute itself. *Bay Area Addiction Research & Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 730 (9th Cir.1999). The plain language of the statute, "may be displayed," makes it discretionary, a fact that wholly undermines CalTrans's argument that the statute requires it to do anything with respect to the display of flags. In addition, the statute refers to a "flag-holder" placed on a "sidewalk." The flags on Highway 17, however, were not contained in "flag holders," but fastened to fences with zipties. Nor were they displayed on "sidewalks," but hung from overpasses. Thus, it is evident that this statute has nothing to do with the CalTrans policy. Because CalTrans's policy of allowing citizens to hang flags but not banners from highway overpasses is not required by state law, and the safety concerns apply equally to both flags and expressive banners, the policy is not reasonable.

**B. Viewpoint Neutrality**

We next determine whether CalTrans's policy amounts to impermissible viewpoint discrimination. *Cornelius*, 473 U.S. at 806, 105 S.Ct. 3439. "Viewpoint discrimination is a form of content discrimination in which 'the government targets not subject matter, but particular views taken by speakers on a subject.'" *Children of the Rosary*, 154 F.3d at 980 (quoting *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995)). CalTrans claims its policy does not favor or target any particular view because the flag does not represent a viewpoint. In the alternative, CalTrans argues that if the flag does

represent a viewpoint, the government is entitled to espouse it.

We first reject CalTrans's argument that the flag encompasses so many different views that it represents no viewpoint at all. "The very purpose of a national flag is to serve as a symbol of our country; it is ... the one visible manifestation of two hundred years of nationhood." *Texas v. Johnson*, 491 U.S. 397, 405, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989). The reason the events of September 11th evoked such a spontaneous proliferation of flags is precisely because of its message. Americans sought solace in the symbol of a nation joined in the effort to combat terror in the face of tragedy. Indeed, it is the potency of the flag's message that makes CalTrans reluctant to remove it from California's highways. In light of recent world events, that reluctance is laudable; however, the policy derived from it is not.

■■■ After the events of September 11th, what the flag's powerful message does not encompass, for many, is exactly that which Courtney and Brown voice: dissent. When "nations ... knit the loyalty of their followings to a flag," *id.*, those who seek not to follow but to chart a different course are unable to express their message through the flag. In a nation founded on the tolerance of dissent, "[t]he way to preserve the flag's special role is not to punish those who feel differently about these matters. It is to persuade them that they are wrong." *Id.* at 419, 109 S.Ct. 2533. Honoring the principles for which the flag stands extends beyond waving it in tribute. Those principles can survive only by allowing the voice of dissent to be heard.

Alternatively, CalTrans argues that if we find that the flag represents a viewpoint, its policy survives scrutiny because, as an arm of state government, it is entitled to endorse that view. CalTrans's reliance upon *Rust v. Sullivan*, 500 U.S. 173,

111 S.Ct. 1759, 114 L.Ed.2d 233 (1991), to support this proposition is misplaced. In *Rust*, the Supreme Court held that Congress may prohibit physicians providing medical care in government-funded health care programs from discussing abortion with their patients. *Id.* at 200, 111 S.Ct. 1759. The Court recognized "that when the government appropriates public funds to promote a particular policy of its own it is entitled to say what it wishes." *Rosenberger*, 515 U.S. at 833, 115 S.Ct. 2510 (citing *Rust*, 500 U.S. at 194, 111 S.Ct. 1759). "In so doing, the Government has not discriminated on the basis of viewpoint; it has merely chosen to fund one activity to the exclusion of the other." *Rust*, 500 U.S. at 193, 111 S.Ct. 1759.

■■■ The *Rust* holding does not encompass the policy at issue. Here, the government neither hung the flag itself nor delegated that authority nor funded the project—private citizens spontaneously expressed their message of patriotism by hanging their flags. Thus, the display of flags is not state-sponsored speech, unlike in Rust. *Rust*'s holding has been limited to situations in which "the government is itself the speaker, or instances ... in which the government used private speakers to transmit [its own message]." *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 541, 121 S.Ct. 1043, 149 L.Ed.2d 63 (2001) (internal quotation marks and citations omitted).

Second, *Rust* addresses only the government's ability to exclude from a government-funded program speech that is incompatible with the program's objectives. While CalTrans argues that it is entitled to advocate a patriotic message, such an entitlement does not comport with its objective of ensuring safe and efficient transport on California's highways. CalTrans is not executing a government-funded project to promote national unity or support the war

effort. Such an undertaking must be implemented via elected policy-makers who are accountable to the public, not by transportation employees who permit, ad hoc, the display of certain banners and not others. *See Downs v. L.A. Unified Sch. Dist.*, 228 F.3d 1003, 1016 (9th Cir.2000) ("In order for the speaker to have the opportunity to speak as the government, the speaker must gain favor with the populace and survive the electoral process.").

We decline to extend the government-funding cases to a situation in which the government has not appropriated any funds toward achieving a policy goal for which it is accountable to the electorate. To do so would deal a crippling blow to the First Amendment by removing an essential check on the government's ability to support one viewpoint to the exclusion of another. *See Legal Servs. Corp.*, 531 U.S. at 541, 121 S.Ct. 1043 (quoting *Bd. of Regents of Univ. of Wis. Sys. v. Southworth*, 529 U.S. 217, 235, 120 S.Ct. 1346, 146 L.Ed.2d 193 (2000)) ("[W]hen the government speaks, for instance to promote its own policies ... it is, in the end, accountable to the electorate and the political process for its advocacy.").

## IV. Irreparable Injury

■ To establish irreparable injury in the First Amendment context, Courtney and Brown need only "demonstrat[e] the existence of a colorable First Amendment claim." *Sammartano v. First Judicial Court*, 303 F.3d 959, 973 (9th Cir.2002). Courtney and Brown have not only stated a colorable First Amendment claim, but one that is likely to prevail; they have thus established the potential for irreparable injury. *See Associated Gen. Contractors*, 950 F.2d at 1410.

■ CalTrans contends that because alternate vehicles of expression are available to Courtney and Brown, they fail to demonstrate a colorable First Amendment claim sufficient to support the district court's finding of irreparable injury. CalTrans first argues that Courtney and Brown had the option of applying for a permit in order to express their message. This assertion is disingenuous at best. Although CalTrans authorizes permits for the display of signs providing directional assistance to motorists attending special events, it is plain that Courtney and Brown's expressive banners are not "directional" or related to a "special event." Even if the signs were to qualify for a permit, Courtney and Brown nevertheless have demonstrated a discriminatory burden on speech, for there is no equivalent requirement for a person desiring to hang an American flag on an overpass. In a nonpublic forum, the government must not make distinctions based on the speaker's viewpoint. *Children of the Rosary*, 154 F.3d at 978. A viewpoint-based permit restriction, and the delay it would necessarily entail, is particularly destructive in the realm of political debate. "Timing is of the essence in politics.... When an event occurs, it is often necessary to have one's voice heard promptly, if it is to be considered at all." *NAACP v. City of Richmond*, 743 F.2d 1346, 1356 (9th Cir. 1984).

■ CalTrans also points to the availability of billboard advertising space as a mechanism for Courtney and Brown to voice their message and thus avoid injury. This argument fails for the same reason: Restrictions on the expression of ideas in a nonpublic forum must be viewpoint neutral. Imposing a financial burden on one viewpoint while permitting the expression of another free of charge runs afoul of this requirement. A city cannot enable "one side of a debate to fight freestyle, while requiring the other to follow Marquis of Queensberry rules." *R.A.V. v. City of St.*

**1226**

*Paul,* 505 U.S. 377, 392, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992). Moreover, the delay involved in obtaining advertising space deals the same blow as does the permit requirement. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976).

Courtney and Brown have stated a colorable First Amendment claim and, thus, the risk of irreparable injury. *Sammartano,* 303 F.3d at 973. We are not persuaded that the injury is alleviated by the spurious claim of alternate avenues for communication of their dissenting views.

### V. Conclusion

In the wake of terror, the message expressed by the flags flying on California's highways has never held more meaning. America, shielded by her very freedom, can stand strong against regimes that dictate their citizenry's expression only by embracing her own sustaining liberty.

**AFFIRMED** and **REMANDED** for further proceedings.

BEEZER, Circuit Judge, concurring:

I concur in Parts I–IV of the opinion of the court, except for the first paragraph of Part I, the first sentence of the second paragraph of Part I, the sixth, seventh and eighth sentences of the third paragraph of Part IIIA and the last four sentences of the second paragraph of Part IIIB. I concur in the judgment of the court affirming and remanding for further proceedings.